■ In the Matter of JEAN C. THEODORE J. BRUNDAGE, Respondent; ROBERT J. DeLASHO, Appellant. [25 NYS3d 255]—

In a proceeding pursuant to Mental Hygiene Law article 81, Robert J. DeLasho appeals from an order of the Supreme Court, Westchester County (Murphy, J.), dated June 11, 2014, which denied his motion for an award of an attorney's fee from the assets of Jean C., an incapacitated person.

Ordered that the order is affirmed, with costs.

Jean C. is an 88-year-old woman who suffered a stroke in 2008, leaving her with no motor control of the left side of her body. She became confined to a wheelchair and bed as a result of the stroke, requiring the constant care of a health care aide. Jean C.'s sole surviving heir-at-law is her grandson, Jeffrey Jacobs. In November 2012, Jacobs was convicted of grand larceny in the second degree and criminal possession of a forged instrument in the second degree arising out of a scheme wherein he fraudulently obtained mortgages on two Suffolk County properties owned by Jean C. and her then living husband, Julius. Jacobs thereafter was prosecuted in connection with the matter, incarcerated, and directed to pay restitution to Jean C. and Julius. Jean C. and Julius did not recover the loss of the value of their properties. Sometime thereafter, Jean C. and Julius commenced a civil action in the Supreme Court, Westchester County, against Jacobs, which is still pending, alleging that Jacobs undertook a similar mortgage scheme in connection with another property they owned, the premises

in which Jean C. resides, and that, as a result, the theretofore debt-free property is now the subject of foreclosure proceedings. The action seeks to recover, inter alia, the mortgage proceeds.

On November 14, 2013, Julius died and, sometime that same day, Jacobs, who had been released from jail, visited Jean C. at her home, accompanied by attorney Robert J. DeLasho. At that time, attorney Kim Frohlinger had power of attorney for Jean C. During the visit, DeLasho drafted and executed a power of attorney naming Jacobs as Jean C.'s new agent, a new will naming Jacobs as executor and residuary beneficiary, a living will, and a health care proxy. Six days later, DeLasho prepared a retainer letter, dated November 20, 2013, which he contends Jean C. executed, setting forth the scope of DeLasho's representation, to wit, "all estate matters concerning [the interests of Jean C.] and those of [her] grandson, Jeffrey Jacobs, from this day forward hereby revoking other attorney agreements currently in existence."

On December 31, 2013, Frohlinger commenced this proceeding pursuant to Mental Hygiene Law article 81, seeking, inter alia, (1) the appointment of a guardian for Jean C., (2) to have Jean C. designated an incapacitated person, and (3) to be appointed as the guardian. The Supreme Court held a hearing and conducted an in camera interview with Jean C.; Jean C.'s court-appointed counsel and a court evaluator were present during the in camera interview. In an order dated February 6, 2014, the court found that Jean C. needed a temporary guardian of her property and that she was an incapacitated person, based on a showing of clear and convincing evidence that she cannot handle her financial affairs. The court appointed Theodore J. Brundage (hereinafter the guardian) as the temporary guardian of Jean C.'s property. All prior powers of attorney signed by Jean C. were immediately revoked.

On March 18, 2014, DeLasho sent his invoice to the guardian for payment of legal services he contends he rendered on behalf of Jean C. from November 14, 2013, through March 12, 2014. DeLasho informed the guardian that, with respect to the legal services rendered after February 4, 2014, he had also been retained by Jean C. to represent Jacobs in a proceeding attempting to evict him from his Bronxville apartment. On April 21, 2014, after DeLasho did not receive a response from the guardian, he moved in the Supreme Court for an award of an attorney's fee for the legal services which he contends he rendered. At the time of the motion to the court, the guardian took no position because DeLasho's motion preceded his appointment as guardian.

In an order dated June 11, 2014, the Supreme Court denied the motion, finding that the record did not support DeLasho's contention that Jean C. had retained his services. The court determined that Jacobs, "a felon convicted of defrauding his grandmother, was the one who contacted DeLasho and requested his services," and that DeLasho's services were not necessary to resolve the issues in the guardianship proceeding. The court noted that it had advised DeLasho at his first appearance before the court that it would only approve fees for the court-appointed counsel to Jean C. and not for any other counsel alleging representation of Jean C. The court found that DeLasho's legal services, "were expended solely to advance Jeffrey Jacob[s]'s interests" and not Jean C.'s best interests. DeLasho appeals. We affirm.

The Supreme Court has broad discretion in determining a reasonable amount, if any, to award as an attorney's fee in a guardianship proceeding (see Matter of Mavis L., 285 AD2d 509, 510 [2001]; Ricciuti v Lombardi, 256 AD2d 892, 893 [1998]), and has the inherent power to supervise the fees charged by an attorney, even in the absence of any party's objection thereto (see Matter of Stortecky v Mazzone, 85 NY2d 518, 525 [1995]; Ricciuti v Lombardi, 256 AD2d at 892). Here, the record supports the Supreme Court's finding that DeLasho's legal services were performed on behalf of Jacobs, and not Jean C. Under these circumstances, the court providently exercised its discretion in denying DeLasho's motion for an award of an attorney's fee to be paid from the assets of Jean C. (see e.g. Matter of Alice D. [Lupoli], 113 AD3d 609, 614 [2014]; see also Matter of Astor, 14 Misc 3d 1201[A], 2006 NY Slip Op 52365[U] [Sup Ct, NY County 2006]). DeLasho's remaining contentions are without merit.

Accordingly, the order must be affirmed. Rivera, J.P., Leventhal, Miller and Duffy, JJ., concur.